This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**MARIA VALDEZ and VICENTE VALDEZ,**
**Individually and as Parents and Next Friends**
**of K.V., a minor,**

      Plaintiffs-Appellants,

v.                                                                    **NO. A-1-CA-35363**

**RICHARD ESTRADA, Individually and in**
**his Official Capacity, and NEW MEXICO**
**CHILDREN, YOUTH & FAMILIES**
**DEPARTMENT,**

      Defendants-Appellees,

and

**CARLSBAD MEDICAL CENTER, L.L.C.,**
**and JANE and JOHN DOES, Unidentified**
**Employees of Carlsbad Medical Center and**
**New Mexico Children, Youth & Families**
**Department,**

      Defendants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson and Jennifer L. Attrep, District Judges**

Mark J. Klecan
Albuqueruqe, NM

for Appellants

Montgomery & Andrews, P.A.
Walter S. Melendres
Seth C. McMillan
Kari E. Olson
Santa Fe, NM

for Appellees

**MEMORANDUM OPINION**

**VARGAS, Judge.**

{1}    Maria and Vicente Valdez (collectively, Plaintiffs) challenge the district court's order dismissing their 42 U.S.C. § 1983 (2012) claims on qualified immunity grounds. Because the conduct that is the subject of this suit was objectively reasonable under the circumstances at the time, we conclude the district court properly concluded that qualified immunity precluded Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983. This determination being dispositive of the remaining issues in this appeal, we affirm.

**BACKGROUND**

{2}    Plaintiffs filed a lawsuit when their newborn child (Child) was removed from their custody because Maria's routine urinalysis tested positive for amphetamines and barbiturates, but a subsequent test revealed that result was likely a false positive. In their complaint, Plaintiffs brought nine claims against the hospital, the New Mexico Children, Youth and Families Department (CYFD),

Richard Estrada in his individual and official capacity as a CYFD employee (collectively, Defendants), as well as other unidentified hospital employees. Only five of the claims are relevant to this appeal: two claims under 42 U.S.C. § 1983, one for a violation of due process rights (Count 1) and the other for unreasonable seizure (Count 2); a claim alleging a violation of the New Mexico Inspection of Public Records Act (IPRA), NMSA 1978 §§ 14-2-1 to -12 (1941, as amended through 2018) (Count 7); a claim for direct and vicarious liability for punitive damages (Count 8); and a claim for prima facie tort (Count 9).

{3}     CYFD and Estrada filed motions to dismiss Counts 8 and 9 in April 2014, which the district court granted, dismissing those counts with prejudice. In June 2015, CYFD and Estrada filed another motion to dismiss, this time seeking dismissal of Counts 1, 2, and 7. The district court granted the motion with respect to Counts 1 and 2, dismissing them with prejudice, and denied the motion as to Count 7. Plaintiffs appeal the district court's orders dismissing Counts 1, 2, 8, and 9.

**DISCUSSION**

{4}     Plaintiffs argue that the district court erred in dismissing Counts 1 and 2 on qualified immunity grounds and that the district court applied the incorrect standard in reaching its decision on that issue. In considering Plaintiffs' arguments, we note that 42 U.S.C. § 1983 does not itself create or establish specific rights, but

3

instead provides a cause of action for monetary damages against a state official in his individual capacity in circumstances where the official has violated a plaintiff's constitutional rights. *Starko, Inc. v. Gallegos*, 2006-NMCA-085, ¶ 10, 140 N.M. 136, 140 P.3d 1085. Qualified immunity is both a defense to liability and entitlement not to stand trial, *Chavez v. Bd. of Cty. Comm'rs of Curry Cty.*, 2001-NMCA-065, ¶ 10, 130 N.M. 753, 31 P.3d 1027, is intended to protect "all but the plainly incompetent or those who knowingly violate the law[,]" and is withheld only in exceptional cases. *Cockrell v. Bd. of Regents of N.M. State Univ.*, 1999-NMCA-073, ¶ 8, 127 N.M. 478, 983 P.2d 427 (internal quotation marks and citation omitted). "The applicability of qualified immunity is a question of law that we review de novo." *Starko, Inc.*, 2006-NMCA-085, ¶ 11.

{5}     In evaluating a claim of qualified immunity, we begin by examining whether a violation of a constitutional right was alleged. *Id.* ¶ 13. If it was, we then consider "whether the relevant law was clearly established at the time of the alleged violation of the constitutional right." *Chavez,* 2001-NMCA-065, ¶ 15. "To be clearly established, the contours of the right must be sufficiently clear that a reasonable official understands that what he is doing violates that right." *Kennedy v. Dexter Consol. Sch.*, 2000-NMSC-025, ¶ 10, 129 N.M. 436, 10 P.3d 115 (alteration, internal quotation marks, and citation omitted). This prong of our analysis is straightforward, as Plaintiffs' complaint alleges the removal of Child

4

from their custody violated their Fourth and Fourteenth Amendment rights, and our case law recognizes "a clearly established right to familial integrity . . . embodied in the Fourteenth Amendment[.]" *Oldfield v. Benavidez*, 1994-NMSC-006, ¶ 14, 116 N.M. 785, 867 P.2d 1167.

{6}    Having confirmed that Plaintiffs alleged a violation of a constitutional right that was clearly established at the time of the challenged conduct, we consider "whether the official's conduct was objectively reasonable in light of the law at the time of the challenged conduct." *Chavez*, 2001-NMCA-065, ¶ 15. In other words, we must determine whether a reasonable person in Estrada's position would have known his or her conduct violated Plaintiffs' right to familial integrity. This reasonableness inquiry is objective, *see Romero v. Sanchez*, 1995-NMSC-028, ¶¶ 4, 24, 119 N.M. 690, 895 P.2d 212, and we consider Defendants' actions in light of the law at the time of the alleged conduct, *Chavez*, 2001-NMCA-065, ¶ 15, not with hindsight, but "in the context of circumstances with which Defendants were confronted." *Oldfield*, 1994-NMSC-006, ¶ 17 (internal quotation marks and citation omitted).

{7}    Although it is beyond dispute that the general right to familial integrity is clearly established, that right is not absolute. *See id.* ¶¶ 15-16 (acknowledging that "the parameters of the right have never been clearly established" and noting that liberty interest in family relations is limited by government interest in protecting

5

minor children). Instead, the right to familial integrity involves a weighing of the parents' rights against the interest of the child and the state. *Id.* ¶ 15. "The state has a right—indeed, duty—to protect minor children" that encompasses protecting children from abuse and situations where abuse might occur, as well as promoting the health, education, and welfare of children. *Id.* ¶¶ 15-16. Because of these countervailing interests and the balancing that accompanies familial relationship liberty interests, "it is difficult, if not impossible, for officials to know when they have violated clearly established law." *Id.* ¶ 15 (internal quotation marks and citation omitted). This is particularly true in light of the state's ability to investigate and terminate the parent-child relationship subject to certain constitutionally mandated procedures and precedent recognizing that, even without parental consent or prior court order, officials may still temporarily deprive a parent of custody in emergency circumstances. *Id.* ¶ 16; *cf. Chavez*, 2001-NMCA-065, ¶ 24 (recognizing rule that Fourth Amendment's exigent circumstances exception to the warrant requirement applies to situations in which an officer has reasonable grounds to believe that immediate action is necessary to safeguard a child from imminent harm or injury). Thus, where the facts of the case render an official's conduct objectively reasonable under the circumstances, the conduct does not violate clearly established law for purposes of our qualified immunity analysis. *Cf. Romero*, 1995-NMSC-028, ¶ 22.

6

**{8}** The facts of this case, according to Plaintiffs' complaint, are that Maria Valdez was administered a routine urinalysis upon admission to the hospital, that the urinalysis test rendered a positive result for amphetamines and barbiturates, and that CYFD, acting through Estrada, removed Child from Plaintiffs' custody as a result of that positive drug test without first providing Plaintiffs with a hearing or seeking additional testing. *See generally Mendoza v. Tamaya Enters.*, 2011-NMSC-030, ¶ 5, 150 N.M. 258, 258 P.3d 1050 (stating that when reviewing a Rule 1-012(B)(6) NMRA motion to dismiss, the court must accept all facts in the complaint as true to determine whether the plaintiff may prevail under any state of the facts alleged). The positive urinalysis results made it objectively reasonable for Estrada to believe that Maria Valdez had ingested a controlled substance while pregnant. Given the safety concerns associated with a child born to a mother ingesting a controlled substance, it was also reasonable for Estrada to act under a belief that intervention was necessary to the child's safety. *Cf.* NMSA 1978, § 32A-4-3(C) (2005) (requiring that the investigation into report of abused or neglected child "shall ensure that immediate steps are taken to protect the health or welfare of the alleged abused or neglected child); NMSA 1978, § 32A-4-2(B)(4) (2009, amended 2018) (defining an "abused child" as one "whose parent . . . has knowingly, intentionally or negligently placed the child in a situation that may endanger the child's life *or health*" (emphasis added)); *see also* NMSA 1978, §

7

32A-4-6(A)(1) (2009, amended 2015) (authorizing law enforcement to take child into custody where there is "evidence giving rise to reasonable grounds to believe that the child is abused . . . and that there is an immediate threat to the child's safety"). We view Estrada's conduct through the lens of facts known at the time. The knowledge, gained through hindsight, that the urinalysis results were a false positive, does not bear on our analysis. *See Oldfield*, 1994-NMSC-006, ¶ 17.

{9}     Plaintiffs argue the district court erred in the application of the Abuse and Neglect Act, NMSA 1978, §§ 32A-4-1 to -35 (1993, as amended through 2018). We interpret Plaintiffs' argument regarding the Abuse and Neglect Act as an attempt to point out Estrada's failure to follow statutorily delineated procedures. Although Plaintiffs complain of a failure to satisfy Section 32A-4-4(D)'s two-day post-removal hearing requirement, that statutory subsection refers only to CYFD's obligation to file an abuse and neglect petition within two days of taking a child into custody. It is unclear from the briefing or record whether CYFD complied, and Plaintiffs do not specifically raise that as an issue—rather, they lament the lack of process generally. Given our analysis of qualified immunity, however, the lack of procedure was objectively reasonable conduct, for which Estrada is entitled to qualified immunity. We need not discuss this issue further in light of Plaintiffs' failure to cite to the record or develop an intelligible argument. *See Headley v.*

8

*Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that this Court does not consider unclear or undeveloped arguments).

{10} Plaintiffs also argue the district court incorrectly applied a summary judgment standard to its analysis of the qualified immunity issue. We disagree. The district court's order sets forth a detailed statement of the correct legal standard to be applied to a motion to dismiss, and there is nothing in the record or in Plaintiffs' briefing to indicate the district court applied a summary judgment standard in reaching its decision on qualified immunity. Further, Plaintiffs have not explained how a consideration of Defendants' motions under the summary judgment standard would have harmed their case. *See Murken v. Solv-Ex Corp.*, 2006-NMCA-064, ¶ 6, 139 N.M. 625, 136 P.3d 1035 (stating that this Court will not address contentions not supported by argument and authority). Indeed, even if the district court had applied a summary judgment standard, it would not have altered the outcome. Although both standards utilize different verbiage, both require the court to view the evidence in a manner favorable to Plaintiffs. *Compare Freeman v. Fairchild*, 2018-NMSC-023, ¶ 14, 416 P.3d 264 (setting forth summary judgment standard by stating that appellate courts must "view the facts in a light most favorable to the party opposing summary judgment and draw all reasonable inferences in support of a trial on the merits" (internal quotation marks and citation omitted)), *with Mendoza*, 2011-NMSC-030, ¶ 5 (setting forth standard for review

9

of motion to dismiss pursuant to Rule 1-012(B)(6) and stating that "we accept as true all facts pleaded in the complaint").

{11} To the extent that the district court's order refers to a standard typically associated with summary judgment, it does so only in its denial of Defendants' motion to dismiss Count 7, Plaintiffs' claims under IPRA. Plaintiffs acknowledge that Count 7 is still before the district court, and nothing in the record indicates the district court has addressed the merits of Plaintiffs' IPRA claim. Indeed, the denial of a motion to dismiss for failure to state a claim generally gives rise to an interlocutory appeal, rather than a final determination that is immediately appealable, and Defendants did not seek interlocutory review. *See King v. Allstate Ins. Co.*, 2007-NMCA-044, ¶ 8, 141 N.M. 612, 159 P.3d 261 (acknowledging that denial of motion to dismiss is generally not an appealable, final order); *Smoot v. Physicians Life Ins. Co.*, 2004-NMCA-027, ¶¶ 5-6, 135 N.M. 265, 87 P.3d 545 (reviewing denial of motion to dismiss under Rule 1-012(B)(6) on interlocutory appeal). Because Plaintiffs' Count 7 remains apparently unresolved in the district court, we need not address the merits of the claim or discuss the standard the district court used in denying the motion to dismiss that claim. *See Gutierrez v. Gutierrez*, 1993-NMCA-103, ¶ 3, 116 N.M. 86, 860 P.2d 216 (declining to address issue on appeal due to lack of district court determination on the merits and inapplicability of collateral order doctrine).

10

{12}      Plaintiffs also seek reversal of the district court's dismissal of Counts 8 and 9, but they have not presented any argument, citation to the record, or authority to support their request. *See* Rule 12-318(A)(4) NMRA (requiring that brief in chief contain "an argument which, with respect to each issue presented, shall contain a statement of the applicable standard of review, the contentions of the appellant, and a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings, or exhibits relied on[,]" as well as citation to applicable New Mexico decisions). Although Plaintiffs briefly discuss Counts 8 and 9 in the background section of their brief in chief, they do not offer any legal argument on the merits of these claims, and as such, have abandoned these issues on appeal. *See Allred v. N.M. Dep't of Transp.*, 2017-NMCA-019, ¶ 68, 388 P.3d 998 (concluding that issues raised but not briefed with legal argument are deemed abandoned); *State ex rel. Children, Youth & Families Dep't v. Patricia N.*, 2000-NMCA-035, ¶ 19, 128 N.M. 813, 999 P.2d 1045 (deeming issue abandoned where party failed to present argument or authority in briefing to appellate court). We therefore do not review the district court's order granting Defendants' motion to dismiss Counts 8 and 9. *See Murken*, 2006-NMCA-064, ¶ 6 (stating that this Court will not address contentions not supported by argument and authority).

**CONCLUSION**

11

{13}    We affirm the district court's order.

{14}    **IT IS SO ORDERED.**

_____
**JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**HENRY M. BOHNHOFF, Judge**

12